No. 125,269

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JASON W. PHIPPS,
*Appellant.*

SYLLABUS BY THE COURT

1.

*Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775, (2023), holds that the First Amendment requires proof of a defendant's subjective understanding of the threatening nature of a statement to be punished as a crime, but a mental state of recklessness is sufficient to establish a true threat. This decision effectively overrules *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019). The holding in *Counterman* applies to any pending criminal case in Kansas in which the defendant's sentence is not final.

2.

K.S.A. 2022 Supp. 21-6819(b), as part of the revised Kansas Sentencing Guidelines Act, applies only to felony sentences and not to misdemeanor sentences.

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Submitted without oral argument. Opinion filed October 20, 2023. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

1

Before SCHROEDER, P.J., MALONE, J., and MARY E. CHRISTOPHER, S.J.

MALONE, J.: Jason W. Phipps appeals his sentences following his no contest pleas to two felonies and two misdemeanors. Phipps objected to his criminal history score, arguing that his prior Kansas conviction for criminal threat could not be included in his criminal history because the State failed to show the conviction was based only on intentional conduct. The district court denied his objection and sentenced Phipps using a criminal history score of B. On appeal, Phipps claims the district court's ruling is contrary to the Kansas Supreme Court's decision in *State v. Boettger*, 310 Kan. 800, 823, 450 P.3d 805 (2019), holding the reckless criminal threat provision of K.S.A. 2018 Supp. 21-5415(a)(1) unconstitutionally overbroad. The State argues, and we agree, that the Kansas Supreme Court's holding in *Boettger* has been effectively overruled by the United States Supreme Court in *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). Thus, we find the district court did not err by using Phipps' prior criminal threat conviction to calculate his criminal history score.

Phipps also claims the district court violated K.S.A. 2022 Supp. 21-6819(b) by ordering him to serve his misdemeanor sentences in the county jail consecutive to his felony sentences, contrary to the statute's double rule that limits the total prison sentence imposed in multiple conviction cases. But we find that K.S.A. 2022 Supp. 21-6819 applies only to felony sentences and not to misdemeanor sentences. Thus, we reject Phipps' statutory construction argument and affirm the district court's judgment.

FACTS

On April 4, 2022, Phipps pleaded no contest to burglary of a vehicle and theft of a firearm—both severity level 9 nonperson felonies—and two misdemeanors—theft and criminal trespass. Phipps committed these crimes on January 3, 2022. Phipps' presentence

2

investigation (PSI) report calculated a criminal history score of B, based in part on a 2010 Kansas conviction for criminal threat.

Phipps objected to the criminal history score and argued that his prior criminal threat conviction could not be used for criminal history purposes because the PSI report did not establish whether his conviction was for intentional or reckless criminal threat. Because the Kansas Supreme Court in *Boettger* had invalidated the portion of Kansas' criminal threat statute proscribing reckless criminal threats as unconstitutional, and because Kansas law forbids convictions arising under statutes that have since been found unconstitutional from being used for criminal history purposes, Phipps argued that his prior criminal threat conviction could not be included in his criminal history score absent proof that his conviction was for intentional criminal threat.

The district court held a hearing on Phipps' criminal history objection, and the State presented a transcript of Phipps' 2010 plea hearing describing the factual basis for his no contest plea to criminal threat. The transcript reflected that Phipps went to a woman's home and demanded that she open a gun safe. When she refused, Phipps said, "'You will if you have a gun to your head.'" Phipps also asked her if she wanted to die there and said that other people were going to die. The district court found that the factual basis for the plea supported a conviction of both intentional and reckless criminal threat. As a result, the district court determined the criminal threat conviction was properly scored as a person felony and overruled Phipps' objection to his criminal history score.

On June 13, 2022, the district court sentenced Phipps to 14 months' imprisonment for burglary of a vehicle, 6 months' imprisonment for felony theft of a firearm, 12 months in the county jail for misdemeanor theft, and 6 months in the county jail for misdemeanor criminal trespass, with all sentences to run consecutive, for a controlling sentence of 20 months with the Kansas Department of Corrections (KDOC) followed by 18 months in the county jail. Phipps timely appealed the district court's judgment.

3

## DID THE DISTRICT COURT ERR IN SCORING PHIPPS' PRIOR CRIMINAL THREAT CONVICTION?

Phipps' appellate brief claims the district court erred by using his prior criminal threat conviction to calculate his criminal history score, resulting in an illegal sentence, because the State failed to prove the conviction was based only on intentional conduct. He argues that his prior criminal threat conviction may have stemmed from a reckless criminal threat found unconstitutional in *Boettger*. Phipps asserts the district court engaged in improper judicial factfinding when it found that the prior criminal threat conviction was based on intentional conduct. He asks us to vacate his sentences and remand for resentencing with a criminal history score of D.

The State's brief, filed in April 2023, argues that reckless criminal threat is not unconstitutional and points out that the United States Supreme Court was addressing the issue in the then-pending case of *Counterman v. Colorado*. The brief also argues that Phipps' criminal history challenge is moot because he has already completed the prison portion of his sentence. On the merits, the State argues that Phipps' criminal history was correctly calculated because his no contest plea established that his prior criminal threat conviction was based on both intentional and reckless conduct, and the statute does not require the State to prove that Phipps' conduct was *only* intentional. Finally, the State argues that Phipps should not be allowed to collaterally attack the constitutional validity of his prior criminal threat conviction through a challenge to his criminal history score.

Phipps filed a reply brief addressing the State's mootness claim but not the State's argument about *Counterman*. The State filed a Supreme Court Rule 6.09 (2023 Kan. S. Ct. R. at 40) letter of additional authority when the *Counterman* decision was issued, asserting that the decision effectively overrules *Boettger* and eliminates any concerns over the constitutionality of Phipps' prior criminal threat conviction. Phipps did not respond to the letter of additional authority as permitted under Rule 6.09(d).

4

Given that *Counterman* was filed after briefing was completed, this court directed the parties to file supplemental briefing on (1) whether *Counterman* effectively overrules *Boettger* and (2) whether the holding in *Counterman* applies to Phipps' criminal history challenge on direct appeal. Phipps' supplemental brief answers no to both questions. As to the first question, Phipps argues that *Counterman* is readily distinguishable because the Colorado statute addressed in that case is different from the Kansas reckless criminal threat statute declared unconstitutional in *Boettger*. He adds that even if the effect of *Counterman* is that the Kansas reckless criminal threat provision does not violate the First Amendment to the United States Constitution, the provision violates section 11 of the Kansas Constitution Bill of Rights. As to the second question, Phipps argues that because reckless criminal threat had been declared unconstitutional in *Boettger* at the time he committed his current crimes, any change in the law cannot affect his sentence.

The State reasserts its previous argument that based on the holding in *Counterman*, the "reckless disregard" portion of the Kansas criminal threat statute does not violate the First Amendment—contrary to the holding in *Boettger*—and eliminates any concerns over the constitutionality of Phipps' prior criminal threat conviction. The State also argues that the holding in *Counterman* applies to Phipps' criminal history challenge and sentence which is pending on direct appeal and not final.

Phipps' criminal history challenge presents an illegal sentence claim subject to unlimited appellate review. *State v. Roberts*, 314 Kan. 316, 319-20, 498 P.3d 725 (2021). Resolution of the parties' arguments requires us to examine the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2022 Supp. 21-6801 et seq. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

5

*This appeal presents a criminal history challenge.*

Before addressing the parties' arguments, we will review how a defendant's sentence is determined under the KSGA. Under the KSGA, a defendant's sentence depends on the severity of the crime of conviction and the defendant's criminal history score. K.S.A. 2022 Supp. 21-6804(d). The severity level for every felony crime in Kansas is determined by the Legislature and is fixed for sentencing purposes as of the date the offender commits the crime. See K.S.A. 2022 Supp. 21-6807 (crime severity scale for nondrug crimes); K.S.A. 2022 Supp. 21-6808 (crime severity scale for drug crimes). The defendant's criminal history is admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge. K.S.A. 2022 Supp. 21-6814(a). It is not fixed for sentencing purposes as of the date the offender commits the crime. K.S.A. 2022 Supp. 21-6810(a). The State bears the burden to prove a defendant's criminal history at sentencing. The State can satisfy this burden by preparing a PSI report. K.S.A. 2022 Supp. 21-6814(b). But if the defendant identifies an error and provides a written objection to the PSI report, then the State must prove the disputed portion of the defendant's criminal history. See K.S.A. 2022 Supp. 21-6814(c).

Generally, all prior convictions must be counted in determining a defendant's criminal history score unless the convictions constitute an element of the present crime, enhance the severity level, or elevate the classification from a misdemeanor to a felony. K.S.A. 2022 Supp. 21-6810(d)(10); *State v. Fowler*, 311 Kan. 136, 142, 457 P.3d 927 (2020). But "[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes." K.S.A. 2022 Supp. 21-6810(d)(9).

When Phipps committed the acts underlying his criminal threat conviction, Kansas law defined the crime as any threat to "[c]ommit violence communicated with intent to terrorize another, . . . or in reckless disregard of the risk of causing such terror . . . ."

6

K.S.A. 2009 Supp. 21-3419(a)(1). The same language is found in the current criminal threat statute. K.S.A. 2022 Supp. 21-5415(a)(1). After Phipps' criminal threat conviction, the Kansas Supreme Court held in *Boettger* that the "reckless disregard" portion of the criminal threat statute was unconstitutionally overbroad. 310 Kan. at 823.

One problem with the Kansas criminal threat statute is that the proscription against an intentional criminal threat and the proscription against a reckless criminal threat are interwoven into the same subsection of the statute. See K.S.A. 2022 Supp. 21-5415(a)(1). So, when a defendant's prior criminal threat conviction is included in a PSI report, it is impossible for the sentencing court to tell only from the PSI report whether the prior criminal threat conviction is based on the intentional version of the offense or on the unconstitutional reckless version of the offense. Because Phipps objected to his PSI report and challenged the inclusion of his prior criminal threat conviction in his criminal history, the State bore the burden of proving that the criminal threat conviction was for the intentional, rather than the reckless, version of the offense. We will now address the specific arguments the parties have made in this appeal about Phipps' criminal history challenge and his prior criminal threat conviction.

*Mootness*

To begin, the State argues that Phipps' criminal history challenge is moot because he has already completed the prison portion of his sentence and his criminal history score does not affect his postrelease term or his misdemeanor sentences. An appellate court exercises unlimited review in deciding whether an appeal is moot. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020).

Phipps concedes that he has completed the prison portion of his sentence but argues that his claim on this issue is not moot because he is still serving his misdemeanor jail sentences and will receive credit for excess time served on his illegal prison sentences

7

if his challenge is successful. In support, he cites *Jackson v. State*, 204 Kan. 841, 846, 466 P.2d 305 (1970) (prisoner whose partially executed sentence is found to be void is entitled to credit for time already served on the void sentence).

At sentencing, a district court must grant a defendant credit for the time which the defendant spent incarcerated pending the disposition of their case. K.S.A. 2022 Supp. 21-6615. The provisions of K.S.A. 2022 Supp. 21-6615 are mandatory and require that a criminal defendant sentenced to incarceration be given credit for all time spent in custody solely on the charges for which they are being sentenced. *State v. Davis*, 312 Kan. 259, 287, 474 P.3d 722 (2020). When a defendant is sentenced for both felony and misdemeanor convictions, the district court should apply the defendant's credit for time spent incarcerated first to the felony sentences, with any remainder credit applying to the misdemeanor sentences. *State v. Harper*, 275 Kan. 888, 892, 69 P.3d 1105 (2003).

After finding that Phipps' criminal history score was B, the district court sentenced him to 14 months' imprisonment for his primary crime of conviction. But if Phipps' prior criminal threat conviction was not properly classified as a person felony, his criminal history score would have been D, and the longest possible presumptive sentence for his primary crime of conviction would have been 13 months. K.S.A. 2022 Supp. 21-6804. Thus, if Phipps' claim is successful, he will receive credit for the excess time served on his illegal prison sentences to be applied to his misdemeanor sentences, reducing his jail sentence by at least one month. Phipps' challenge on this issue is not moot.

*Does the holding in* Boettger *still control?*

Turning to the merits, Phipps claims the district court erred by using his prior criminal threat conviction to calculate his criminal history score because the State failed to prove the conviction was based only on intentional conduct. He asserts the district court engaged in improper judicial factfinding when it found that the prior criminal threat

8

conviction was based on intentional conduct. Phipps argues the conviction may have stemmed from a reckless criminal threat found unconstitutional in *Boettger*.

In response, the State first argues that the Kansas Supreme Court's holding in *Boettger* has been effectively overruled by the United States Supreme Court's decision in *Counterman*, 600 U.S. at 69 (holding a mental state of recklessness can establish a true threat, unprotected by the First Amendment). Thus, the State argues there is no question about the constitutional validity of Phipps' prior criminal threat conviction.

*Boettger* was a direct appeal of Timothy C. Boettger's conviction of reckless criminal threat in which he challenged the constitutionality of the Kansas criminal threat statute. Our Supreme Court held that the "reckless disregard" portion of Kansas' criminal threat statute violates the First Amendment of the United States Constitution. 310 Kan. at 823. To reach this conclusion, the court applied the United States Supreme Court's "true threat" doctrine, as laid out in *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). The court determined that for a threat to be constitutionally proscribed conduct under *Black*, the speaker must make the threat with an intent to place the victim in fear of bodily harm or death. *Boettger*, 310 Kan. at 817. Because the "reckless disregard" portion of Kansas' criminal threat statute could apply to statements made without the intent to cause fear of violence, the Kansas Supreme Court held that it was unconstitutionally overbroad. 310 Kan. at 823. The court reversed Boettger's reckless criminal threat conviction because it was based *solely* on the unconstitutional reckless provision of the statute. 310 Kan. at 823.

Before conducting the above analysis, the Kansas Supreme Court noted that the United States Supreme Court had never explicitly considered whether a conviction for recklessly making a threat can be a true threat or instead violates the First Amendment. 310 Kan. at 809. But the United States Supreme Court has now explicitly addressed this question in *Counterman*. In that case, Billy Raymond Counterman sent hundreds of

9

Facebook messages to C.W., a local singer and musician. The two had never met, and C.W. never responded to the messages. Some messages were benign, but other messages expressed anger at C.W. and caused her to fear for her safety: "'Fuck off permanently.'" And "'Staying in cyber life is going to kill you.'" 600 U.S. at 70. C.W. contacted authorities, and Colorado charged Counterman under a stalking statute making it unlawful to repeatedly make any form of communication with another person in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." Colo. Rev. Stat. § 18-3-602(1)(c) (2022).

Counterman moved to dismiss on First Amendment grounds, arguing that his messages were not true threats and could not support a criminal prosecution. The trial court denied the motion, reasoning the statute applied an "objective reasonable person" standard to decide whether conduct constituted a threat and whether Counterman had any subjective intent to threaten did not matter. 600 U.S. at 71. The jury found Counterman guilty as charged. The Colorado Court of Appeals affirmed the conviction, rejecting Counterman's First Amendment claim, and the Colorado Supreme Court denied review. The United States Supreme Court granted certiorari, observing that courts are divided about (1) whether the First Amendment requires proof of a defendant's subjective mindset in true-threats cases, and (2) if so, what mens rea standard is sufficient. 600 U.S. at 72. The opening paragraph of the Court's opinion succinctly stated:

> "True threats of violence are outside the bounds of First Amendment protection and punishable as crimes. Today we consider a criminal conviction for communications falling within that historically unprotected category. The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as

10

threatening violence. The State need not prove any more demanding form of subjective intent to threaten another." 600 U.S. at 69.

The Court in *Counterman* began its analysis by observing that "[t]rue threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." 600 U.S. at 72. The Court also observed that the existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end. 600 U.S. at 72. Still, the Court held that the First Amendment requires proof that a defendant must have some subjective understanding of the threatening nature of their statements to be prosecuted for a crime. 600 U.S. at. 76-78. As for what level of subjective understanding is required, the Court held that a recklessness standard—a showing that a person consciously disregards a substantial and unjustifiable risk that their conduct will cause harm to another—is the appropriate *mens rea*. 600 U.S. at 79-82.

Because the statute allowed Colorado to convict Counterman of a crime without proving any awareness on his part that his statements could be understood as threatening, even a reckless disregard of the risk of causing such a threat, the Court concluded that the statute violated the First Amendment. 600 U.S. at 82. Thus, the Court vacated the judgment of the Colorado Court of Appeals and remanded for further proceedings. 600 U.S. at 83. Justice Sotomayor filed a concurring opinion agreeing with the Court's conclusion that the First Amendment requires a subjective *mens rea* in true threat cases and that "recklessness [was] amply sufficient for this case," but she would have limited the holding to the facts of Counterman's case. 600 U.S. at 104. Justices Barrett and Thomas dissented and would have held that the objective standard in the Colorado statute was constitutional under the First Amendment. 600 U.S. at 106.

Phipps argues that *Counterman* is readily distinguishable because the Colorado stalking statute addressed in that case is different from the Kansas reckless criminal threat statute declared unconstitutional in *Boettger*. On the surface, Phipps is correct that the

11

statutes are different. But Phipps goes on to argue that "[t]he differences in the stalking statute at issue in *Counterman* and our criminal threat statute demonstrate that *Boettger* and *Counterman* can occupy the same First Amendment universe without conflict." We disagree. While the Colorado statute the Court struck down in *Counterman* is different from the Kansas criminal threat statute, the fact remains that *Counterman* holds that reckless mens rea is sufficient to establish a true threat that is not protected by the First Amendment. *Boettger* holds the opposite. On the central issue of whether a mental state of recklessness is sufficient to establish a true threat that is not protected by the First Amendment, *Counterman* effectively overrules *Boettger*.

Phipps also argues that even if the effect of *Counterman* is that the Kansas reckless criminal threat provision does not violate the First Amendment, the provision violates section 11 of the Kansas Constitution Bill of Rights. Section 11 of the Kansas Constitution Bill of Rights provides that "all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such rights." We presume that in the appropriate case a party may argue that the crime of reckless criminal threat violates the Kansas Constitution, although we observe that the Kansas Supreme Court has stated that the First Amendment and section 11 of the Kansas Constitution Bill of Rights are "generally considered coextensive." *State v. Russell*, 227 Kan. 897, 899, 610 P.2d 1122 (1980). But this issue will need to be raised in another case—a direct appeal of a defendant's conviction of reckless criminal threat. Phipps cannot collaterally attack the constitutional validity of his 13-year-old criminal threat conviction in this sentencing appeal; he can only challenge his criminal history calculation. For Phipps to argue that the crime of reckless criminal threat violates the Kansas Constitution would be going well beyond a challenge to his criminal history score.

The Kansas Supreme Court's holding in *Boettger* was grounded on its interpretation of the First Amendment, not on any provision of the Kansas Constitution. The United States Supreme Court is the final arbiter of the federal Constitution. See *State*

12

*v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013) ("The United States Supreme Court's interpretation of the United States Constitution is controlling upon and must be followed by state courts."). *Counterman* holds that the First Amendment requires proof of a defendant's subjective understanding of the threatening nature of a statement to be punished as a crime, but a mental state of recklessness is sufficient to establish a true threat. 600 U.S. at 69. The Kansas criminal threat statute, including the reckless disregard portion of the statute, would pass constitutional muster under *Counterman*. See K.S.A. 2022 Supp. 21-5202(j) (defining recklessness under the Kansas criminal code with the same common law meaning subscribed to the term in *Counterman*).

This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). But we are also duty bound to follow controlling United States Supreme Court precedent. *Lawson*, 296 Kan. 1084, Syl. ¶ 1. In *Boettger*, the Kansas Supreme Court interpreted the federal Constitution in the absence of a controlling United States Supreme Court opinion. The United States Supreme Court has now directly addressed the question at issue in *Boettger* and reached a contrary result. Given that the court's analysis in *Boettger* was based solely on the First Amendment and given that the United States Supreme Court has the final say when interpreting the federal Constitution, we are justified in not following *Boettger* here.

Finally, Phipps argues that because reckless criminal threat had been declared unconstitutional in *Boettger* at the time he committed his current crimes, any change in the law cannot affect his sentence. Phipps quotes *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015): "[I]t is a fundamental rule of sentencing that the penalty parameters for a crime are established at the time the crime was committed." In *Keel*, the issue was whether the defendant's pre-KSGA out-of-state convictions should be classified as person or nonperson for criminal history purposes based on the classification in effect

13

for comparable Kansas offenses when the prior offenses occurred or when the current crime of conviction was committed. 302 Kan. at 563-64. That is not the issue here.

This is Phipps' direct sentencing appeal. We apply the longstanding rule that "changes in the law apply prospectively and only to cases on direct review." *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019); see also *State v. Ford*, 302 Kan. 455, 471, 353 P.3d 1143 (2015); *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013); *State v. Berry*, 292 Kan. 493, 514, 254 P.3d 1276 (2011). Indeed, this court ruled that the holding in *Boettger* was a change in the law that applied to cases on direct appeal. *State v. Stevenson*, 59 Kan. App. 2d 49, 60, 478 P.3d 781 (2020). Phipps does not explain why the holding in *Boettger* was applied to cases pending on direct appeal but the holding in *Counterman* should not be applied to cases pending on direct appeal.

The State cannot collaterally attack and challenge any sentence in which the defendant's criminal history score was determined based on *Boettger* if that sentence is final, even though the United States Supreme Court has now issued a decision contrary to *Boettger*. See *State v. Dawson*, 310 Kan. 112, Syl. ¶ 2, 444 P.3d 914 (2019) ("After a direct appeal is final, a movant seeking the correction of an illegal sentence under K.S.A. 22-3504[1] will have the sentence's legality determined by the law in effect at the time the sentence was pronounced, unaffected by any subsequent change in the law."). But Phipps' sentence is not final and is on direct review. Or perhaps the holding in *Counterman* is what the Kansas Supreme Court calls a "subsequent development[] in the law," rather than a true change in the law, that shows that an earlier determination—the holding in *Boettger*—was wrong on the merits. *Murdock*, 309 Kan. at 592. In this situation, whether Phipps' sentence was legal or illegal would not be controlled by the law in effect at the time his sentence was pronounced. Either way, the holding in *Counterman* should apply to Phipps' criminal history challenge on direct appeal.

14

More importantly, there is a statutory basis for applying a change in the law to any sentence that is not final and still pending on direct appeal, if that change in the law affects how a defendant's criminal history score is calculated. Under the KSGA, the severity level for every felony crime in Kansas is determined by the Legislature and is fixed for sentencing purposes as of the date the offender commits the crime. But the defendant's criminal history is admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge. K.S.A. 2022 Supp. 21-6814(a). It is *not* fixed for sentencing purposes as of the date the offender commits the crime. K.S.A. 2022 Supp. 21-6810(a). Phipps' sentence is not final, and his criminal history calculation remains an open question. As a result, when the United States Supreme Court issues a decision interpreting the federal Constitution, and the decision affects the determination of an offender's criminal history score, the decision should apply to any pending criminal case in which the offender's sentence is not final.

Here the district court determined from the evidence presented at the sentencing hearing that Phipps' prior criminal threat conviction was properly scored as a person felony because the factual basis for the plea supported a conviction of both intentional and reckless criminal threat. Phipps argues on appeal that the ruling was wrong because the State failed to show that the prior conviction was based *only* on intentional conduct. Before this court could review the propriety of the district court's non-final sentencing order in Phipps' direct appeal, the United States Supreme Court decided *Counterman* which makes it irrelevant whether Phipps' prior criminal threat conviction was based on intentional or reckless conduct. The holding in *Counterman* applies in this direct appeal of Phipps' criminal history challenge because Phipps' sentence is not final.

Any other ruling would raise even more questions about calculating criminal history scores when a defendant has a prior Kansas criminal threat conviction. Does the holding in *Counterman* apply only to crimes committed after June 27, 2023, the date *Counterman* was decided? But is it that simple? Must courts also wait until the Kansas

15

Supreme Court expressly overrules *Boettger* before knowing how to score prior criminal threat convictions, even when sentencing defendants for crimes committed after June 27, 2023? Or for that matter, can reckless criminal threat convictions *ever* be included in a defendant's criminal history because at one point in time, the Kansas Supreme Court determined that the reckless criminal threat statute violated the First Amendment? A literal reading of K.S.A. 2022 Supp. 21-6810(d)(9) would seem to lead to this result.

Phipps *was* sentenced according to the penalty parameters in effect when he committed his current crimes of conviction on January 3, 2022. On that date, burglary of a vehicle and theft of a firearm were severity level 9 felonies and Phipps was sentenced as such. See K.S.A. 2021 Supp. 21-5807(a)(3), (c)(1)(A)(iii) and K.S.A. 2021 Supp. 21-5801(a)(1), (b)(7). As for his criminal history score, criminal threat was classified as a person felony when Phipps committed the offense in 2010 and also when he committed his current crimes. See K.S.A. 2009 Supp. 21-3419(b) and K.S.A. 2021 Supp. 21-5415(c)(1). According to the penalty parameters in effect on January 3, 2022, the district court properly sentenced Phipps to 14 months' imprisonment for burglary of a vehicle and to 6 months' imprisonment for theft of a firearm. Phipps received a legal sentence.

In sum, Phipps' criminal history score is still being reviewed and his sentence is not final. Phipps' 2010 criminal threat conviction arose when he either intentionally or recklessly threatened to put a gun to a woman's head and asked her if she wanted to die. Under the holding in *Counterman*, there are no First Amendment concerns about the constitutionality of Phipps' prior criminal threat conviction. As a result, the district court did not err by using Phipps' prior criminal threat conviction to calculate his criminal history score. Based on this finding, we need not reach the State's remaining arguments on this issue. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (district court's decision will be upheld if it is correct for any reason).

16

## DID THE DISTRICT COURT VIOLATE
## K.S.A. 2022 SUPP. 21-6819(b) IN SENTENCING PHIPPS?

Phipps next claims the district court erred by violating K.S.A. 2022 Supp. 21-6819(b) in sentencing him. K.S.A. 2022 Supp. 21-6819, a provision of the KSGA, governs sentencing in multiple conviction cases. The district court sentenced Phipps to 14 months' imprisonment for burglary of a vehicle, his primary crime of conviction, 6 months' imprisonment for felony theft of a firearm, 12 months in the county jail for misdemeanor theft, and 6 months in the county jail for misdemeanor criminal trespass. The district court ordered all sentences to run consecutive for a controlling sentence of 20 months with the KDOC followed by 18 months in the county jail. Phipps argues that the district court violated K.S.A. 2022 Supp. 21-6819(b) by: (1) ordering him to serve his misdemeanor sentences in the county jail; and (2) sentencing him to a total sentence (38 months) that exceeded twice the base sentence.

While Phipps did not raise this issue before the district court, he is serving an illegal sentence if his argument is correct. An appellate court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 2022 Supp. 22-3504(a); *State v. Louis*, 305 Kan. 453, 466, 384 P.3d 1 (2016). As we noted before, appellate courts exercise unlimited review over the legality of a sentence. *Roberts*, 314 Kan. at 319-20. And statutory interpretation presents a question of law over which appellate courts have unlimited review. *Stoll*, 312 Kan. at 736.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be determined. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first try to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind

17

that clear language, and it should avoid reading something into the statute that is not readily found in its words. 309 Kan. at 164. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018).

Under K.S.A. 2022 Supp. 21-6819(b)(6): "If the sentence for [a defendant's] primary crime is a prison term, the entire imprisonment term of the consecutive sentences will be served in prison." Also, K.S.A. 2022 Supp. 21-6819(b)(4) provides:

"The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence. This limit shall apply only to the total sentence, and it shall not be necessary to reduce the duration of any of the nonbase sentences imposed to be served consecutively to the base sentence."

Phipps argues that, under the plain language of K.S.A. 2022 Supp. 21-6819(b)(6), the district court erred by ordering him to serve his misdemeanor sentences in the county jail. Because his primary crime of conviction required a prison term, Phipps contends that K.S.A. 2022 Supp. 21-6819(b)(6) requires his entire sentence to be served in prison, even the sentences for the misdemeanor convictions. Phipps also asserts that the total length of his consecutive sentences violates K.S.A. 2022 Supp. 21-6819(b)(4) because it exceeds twice the base sentence. If Phipps is correct, his total sentence cannot exceed 28 months, twice the base sentence, and he should serve the total sentence in prison.

The State urges us to reject Phipps' argument out of hand, as the Kansas Supreme Court has instructed that K.S.A. 2022 Supp. 21-6819, as part of the KSGA, only applies to felony sentences. See *State v. Huff*, 277 Kan. 195, 197-98, 83 P.3d 206 (2004) (discussing K.S.A. 2002 Supp. 21-4720[b], now codified at K.S.A. 2022 Supp. 21-6819[b]); see also *State v. Snow*, 282 Kan. 323, 346, 144 P.3d 729 (2006) (relying on

18

*Huff*), *abrogated on other grounds by State v. Guder*, 293 Kan. 763, 267 P.3d 751 (2012). K.S.A. 2022 Supp. 21-6819(b) governs imposing consecutive presumptive felony sentences and does not apply to misdemeanor sentences. *Huff*, 277 Kan. at 197-98. K.S.A. 2022 Supp. 21-6606(a), meanwhile, authorizes a district court to impose consecutive sentences in misdemeanor convictions. *Huff*, 277 Kan. at 206-07 (discussing K.S.A. 2002 Supp. 21-4608[a], now codified at K.S.A. 2022 Supp. 21-6606[a]).

Phipps acknowledges the decisions in *Huff* and *Snow*. He also acknowledges that this court has repeatedly rejected the arguments he raises here, consistently holding that K.S.A. 2022 Supp. 21-6819(b) does not apply to misdemeanors. See *State v. Reed*, 23 Kan. App. 2d 661, 663, 934 P.2d 157 (1997); *State v. Scott*, No. 118,979, 2019 WL 2559515, at *8-10 (Kan. App. 2019) (unpublished opinion); *State v. Maggett*, No. 118,057, 2018 WL 4840311, at *3-4 (Kan. App. 2018) (unpublished opinion); *State v. Lowe*, No. 117,943, 2018 WL 4655619, at *4-5 (Kan. App. 2018) (unpublished opinion); *State v. Flores*, No. 116,853, 2018 WL 1022843, at *2 (Kan. App. 2018) (unpublished opinion).

Phipps argues that the discussion of K.S.A. 2002 Supp. 21-4720(b) (now K.S.A. 2022 Supp. 21-6819[b]) in *Huff* and *Snow* is incorrect and judicial dictum, at best. And he argues that the decisions of previous panels of this court relying on *Huff* and *Snow* should, as such, be disregarded. Judicial dictum is an expression of opinion on a question directly involved in a particular case, argued by counsel, and deliberately ruled on by the court, although not necessary to a decision. While not binding as a decision, judicial dictum is entitled to greater weight than obiter dictum and should not be lightly disregarded. It is issued with the intent to guide lower courts. *Jamerson v. Heimgartner*, 304 Kan. 678, 686, 372 P.3d 1236 (2016).

In *Huff*, the court addressed whether statutory authority exists for the imposition of consecutive jail sentences on misdemeanor offenses. 277 Kan. at 195. The issue in *Snow*

19

was whether the misdemeanor sentences bringing the total sentence above the double rule violated the Eighth Amendment to the United States Constitution. 282 Kan. at 346-47. In both cases, the court's discussion of K.S.A. 21-4720(b) (now K.S.A. 2022 Supp. 21-6819[b]) was not strictly necessary to the decision. While *Huff* and *Snow* are instructive, the decisions are not binding precedents that control the outcome of Phipps' claims.

But even if we disregard the analysis in all prior cases that have construed the applicable statutes, we reject Phipps' statutory interpretation. Phipps argues that the plain text of K.S.A. 2022 Supp. 21-6819 and K.S.A. 2022 Supp. 21-6606, when construed *in pari materia*, indicates that K.S.A. 2022 Supp. 21-6819(b) applies to misdemeanor sentences imposed consecutively to felony sentences. In support of this interpretation, he notes that K.S.A. 2022 Supp. 21-6819 and K.S.A. 2022 Supp. 21-6606 are not mutually exclusive. See K.S.A. 2022 Supp. 21-6819(a) (specifically incorporating portions of K.S.A. 2022 Supp. 21-6606). Phipps also argues that there is nothing in the text of K.S.A. 2022 Supp. 21-6819(b) limiting its provisions to presumptive felony sentences. And he argues that since K.S.A. 2022 Supp. 21-6606 is a more general provision and K.S.A. 2022 Supp. 21-6819 is a more specific provision, K.S.A. 2022 Supp. 21-6819 should control in any conflict between the two provisions.

Phipps thus argues that while K.S.A. 2022 Supp. 21-6606 provides the district court general discretion to order sentences imposed on the same defendant on the same date to run consecutive, K.S.A. 2022 Supp. 21-6819 provides additional provisions that apply to when there are multiple convictions and at least one of them is a felony, implicating the KSGA. Phipps also argues that reading K.S.A. 2022 Supp. 21-6819(b) as applying only to felony convictions, which are already served in prison, makes K.S.A. 2022 Supp. 21-6819(b)(6) a redundant provision. He argues that there is no other possible meaning for K.S.A. 2022 Supp. 21-6819(b)(6) than as applying to both misdemeanors and felonies—i.e., as requiring misdemeanor sentences imposed consecutively to felony sentences to be served in prison as well.

20

Phipps' textual arguments are unavailing. While Phipps is correct that K.S.A. 2022 Supp. 21-6819(a) incorporates portions of K.S.A. 2022 Supp. 21-6606, this fact does not support his interpretation of the statutes. K.S.A. 2022 Supp. 21-6819 is part of the KSGA. K.S.A. 2022 Supp. 21-6802(c) states the sentencing guidelines and prosecuting standards of the KSGA apply to felony crimes committed on or after July 1, 1993. Thus, K.S.A. 2022 Supp. 21-6819, which governs sentencing in multiple conviction cases, applies to felony sentences. On the other hand, K.S.A. 2022 Supp. 21-6606, a general sentencing statute not part of the KSGA, governs multiple sentences for misdemeanor convictions.

As a result, the double rule found in K.S.A. 2022 Supp. 21-6819(b)(4) applies only to consecutive felony sentences. K.S.A. 2022 Supp. 21-6606, which applies to multiple sentences for misdemeanor convictions, contains no limitation to the total sentence like the limitation found in K.S.A. 2022 Supp. 21-6819(b)(4). Thus, a defendant like Phipps convicted of both felony crimes and misdemeanor crimes can receive multiple consecutive misdemeanor sentences even if the total sentence is more than double the base felony sentence without violating K.S.A. 2022 Supp. 21-6819(b)(4).

Similarly, K.S.A. 2022 Supp. 21-6819(b)(6) only applies to felony sentences. The provision means that if the sentence for the primary felony crime is a prison term, then the entire term for the consecutive felony sentences will be served in prison, even if the consecutive felony sentences are otherwise presumptive probation. K.S.A. 2022 Supp. 21-6819(b)(6) does not mean that consecutive misdemeanor sentences must be served in prison instead of jail. To the contrary, K.S.A. 2022 Supp. 21-6604(a)(1), a general sentencing statute not part of the KSGA, explicitly provides that confinement for misdemeanors shall be in jail for the term provided by law. Phipps' assertion that he should be serving his misdemeanor sentences in prison subject to the double rule is contrary to Kansas' statutory sentencing scheme.

21

Affirmed.

* * *

SCHROEDER, J., concurring in part and dissenting in part:  While I join in the majority's opinion as to Issue II, I respectfully dissent from Issue I in the majority's opinion.

I write separately to express my concern with the majority's conclusion the district court did not err in determining Phipps' criminal history in light of *Counterman v. Colorado*, 600 U.S. 66, 72-73, 143 S. Ct. 2106, 216 L. Ed. 2d 775, (2023). I believe the district court did err under the law in existence at the time of original sentencing by making a factual determination about a disputed point—the nature of Phipps' prior criminal threat conviction—based on the factual basis set forth by the State at Phipps' no-contest plea colloquy.

The United States Supreme Court has clearly held that a sentencing judge who makes his or her own factual determinations about a prior conviction from the factual basis provided at the time of the plea engages in impermissible judicial fact-finding:

"[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. See *Shepard*, 544 U.S., at 25 (plurality opinion); *id.*, at 28 (Thomas, J., concurring in part and concurring in judgment) (stating that such an approach would amount to 'constitutional error'). He is prohibited from conducting such an inquiry himself; and *so too he is barred from making a disputed determination about 'what the defendant and state judge must have understood as the factual basis of the prior plea*' or 'what the jury in a prior trial must have accepted as the theory of the crime.' See *id.*, at 25 (plurality opinion); *Descamps*, 570 U.S., at 269. *He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant*

22

*was convicted of."* (Emphases added.) *Mathis v. United States*, 579 U.S. 500, 511-12, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016).

While transcripts of plea hearings are among the limited class of documents a sentencing court is allowed to examine in determining a defendant's criminal history, the court's inquiry is limited to determining whether the transcript reflects the specific elements of the crime to which the defendant pled. See *State v. Dickey*, 301 Kan. 1018, 1037-38, 350 P.3d 1054 (2015). Here, the district court went beyond its authority by looking at the transcript and making its own factual determination that the factual basis for the plea supported both reckless and intentional conduct.

*Mathis* controls how a defendant's criminal history is analyzed. I find numerous cases persuasively address the calculation of a defendant's criminal history involving convictions for criminal threat after our Supreme Court's decision in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019). Prior panels of this court, as well as our Supreme Court, found the convictions for criminal threat had to be scored as nonperson felonies because the district court was not allowed to make its own determination the prior conviction was the result of intentional conduct and not reckless. See *State v. Garza*, 290 Kan. 1021, 1035-36, 236 P.3d 501 (2010) (when charged alternatively a defendant can only be convicted of one crime); *State v. Holloman*, No. 125,062, 2023 WL 3143656, at *4 (Kan. App. 2023) (unpublished opinion) (sparse record insufficient to establish defendant pleaded guilty to intentional criminal threat rather than reckless criminal threat); *State v. Martinez-Guerrero*, No. 123,447, 2022 WL 68543, at *6 (Kan. App. 2022) (unpublished opinion) (conduct can only constitute—and give rise to a conviction of—either reckless or an intentional criminal threat); *State v. Jackson*, No. 124,271, 2022 WL 1906940, at *5 (Kan. App. 2022) (unpublished opinion) (in a no contest plea there is nothing in the record to show whether the plea was to an intentional act or a reckless act of criminal threat), *rev. denied* 316 Kan. 761 (2022); *State v. Howell*, No. 124,650, 2022 WL 4003626, at *3-4 (Kan. App. 2022) (unpublished opinion) (the State must prove

23

under which version of the offense he was convicted of), *rev. denied* 316 Kan. 761 (2022).

I am further hesitant to join in the majority's conclusion our Supreme Court will most likely find *Counterman* overrules *Boettger* at its next opportunity to examine the issue. When our Supreme Court has previously considered and decided an issue, we are duty bound to follow its holding on the issue unless we have some indication our Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). I agree *Boettger* was decided based on the First Amendment to the United States Constitution. The United States Supreme Court's interpretation of the United States Constitution is controlling. *State v. Kornelson*, 311 Kan. 711, 715, 466 P.3d 892 (2020). However, as Phipps points out, our Supreme Court has the authority to interpret the Kansas Constitution as providing greater or different protections than the United States Constitution. *State v. Albano*, 313 Kan. 638, 644-45, 487 P.3d 750 (2021). Unlike the majority, I do not see Phipps' argument as an attempt to relitigate the validity of his prior conviction. Rather, he is pointing out a very real possibility that reckless criminal threat will remain unconstitutional in Kansas irrespective of *Counterman*.

Our Supreme Court has previously found § 11 of the Kansas Constitution Bill of Rights generally provides the same protections as the First Amendment. *State v. Russell*, 227 Kan. 897, 899, 610 P.2d 1122 (1980). But that does not necessarily mean the protections under the Kansas Constitution have lessened because the United States Supreme Court set a lower bar under the United States Constitution. "It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires." *California v. Ramos*, 463 U.S. 992, 1013-14, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). If, as our Supreme Court found in *Boettger*, reckless criminal threat under K.S.A. 2018 Supp. 21-5415(a)(1) violated the First Amendment, it necessarily violated § 11 of the Kansas Constitution Bill of Rights. See *Russell*, 227 Kan.

24

at 899. Our Supreme Court is free to interpret § 11 of the Kansas Constitution Bill of Rights to provide broader protection for Kansans than the United States Constitution provides.

In *State v. Tatro*, 310 Kan. 263, 272, 445 P.3d 173 (2019), our Supreme Court recognized its prior ruling in *State v. Moralez*, 297 Kan. 397, 300 P.3d 1090 (2013), was effectively overruled by *Utah v. Strieff*, 579 U.S. 232, 237-43, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016), insofar as the Court's interpretation of the Fourth Amendment to the United States Constitution was controlling. However, the *Tatro* court noted there may be a separate basis to continue applying the rationale in *Moralez* under the Kansas Constitution, but the argument had not been properly briefed. *Tatro*, 310 Kan. at 272-73. Notably, our Supreme Court has recently interpreted other provisions of the Kansas Constitution as providing greater protections than the United States Supreme Court has recognized under the United States Constitution. Compare *Dobbs v. Jackson Women's Health Organization*, 597 U.S. ___, 142 S. Ct. 2228, 2235, 213 L. Ed. 2d 545 (2022) (holding federal Constitution does not provide right to abortion), with *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 624, 440 P.3d 461 (2019) (Kansas Constitution Bill of Rights guarantees women right to personal autonomy).

As Phipps also points out, the language of K.S.A. 2022 Supp. 21-5415(a)(1) and the conduct prohibited thereunder differs from Colo. Rev. Stat. § 18-3-602(1)(c). Our Supreme Court has previously found its specific interpretation of a Kansas statute—K.S.A. 2016 Supp. 8-1025—rendered it unconstitutional, notwithstanding broader constitutional propositions as applied to other states' statutes. *State v. Ryce*, 306 Kan. 682, 691-99, 396 P.3d 711 (2017) (based on statutory interpretation, K.S.A. 2016 Supp. 8-1025 unconstitutional notwithstanding the United States Supreme Court's Fourth Amendment analysis of Minnesota and North Dakota criminal refusal/implied consent statutes in *Birchfield v. North Dakota*, 579 U.S. 438, 136 S. Ct. 2160, 195 L. Ed. 2d 560 [2016]). The Colorado statute addressed in *Counterman* prohibits stalking through

repeated acts of communication. In other words, a repeated pattern of conduct is the target of the law. See Colo. Rev. Stat. § 18-3-602(1)(c). In contrast, K.S.A. 2022 Supp. 21-5415(a)(1) criminalizes pure speech based on its content and requires no repetitive acts. This distinction seems to be the point of Justice Sotomayor's concurrence suggesting *Counterman*'s application should be limited to the Colorado statute at issue there. *Counterman*, 600 U.S. at 85-86 (Sotomayor, J., concurring). Accordingly, I cannot conclude the reckless criminal threat provision of K.S.A. 2022 Supp. 21-5415(a)(1) will necessarily be found constitutional by our Supreme Court in light of *Counterman*.

Further, the majority's application of *Counterman* allows the State to benefit from a perceived change in the law. I see a significant problem here in allowing the State to benefit from a change in the law while Phipps' direct appeal is pending. Kansas appellate courts have often discussed extending the benefit of a change in the law *to a defendant* on direct appeal. See, e.g., *State v. Dawson*, 310 Kan. 112, 117, 444 P.3d 914 (2019) ("*Murdock II* clarified that it was not changing the longstanding rule that a defendant will receive the benefit of a change in the law that occurs while his or her case is pending on direct appeal."). A thorough review of pertinent authority has not revealed any cases in Kansas where the same benefit has been explicitly extended to the State. In other cases, our Supreme Court generally referred to the rule as applying prospectively to cases pending on direct appeal without specifically saying to whom the benefit of the new rule of law may apply. See *State v. Boggs*, 287 Kan. 298, 306, 197 P.3d 441 (2008) (noting "'a new rule for the conduct of criminal prosecutions is to be applied . . . to all cases, state or federal, *pending on direct review or not yet final*'" [emphasis added] before applying rule in favor of defendant).

The closest our Supreme Court has come to suggesting this rule *could* extend to the State is in dicta from *Murdock II*: "Put simply, *a party* may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was

26

pronounced." (Emphasis added.) *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019) (*Murdock II*). There, our Supreme Court held the State was not entitled to the benefit of the change in the law because Murdock had been resentenced under the mandate in *Murdock I* and the State challenged his new sentence through a motion to correct illegal sentence. That is, our Supreme Court's statutory interpretation of when the legality of a sentence is determined precluded such an application, irrespective of whether such application would be legally sound given the underlying rationale for the rule. *Murdock II*, 309 Kan. at 591-93. And given our Supreme Court's subsequent explanation of this point in *Dawson*, I am extremely reluctant to conclude our Supreme Court's passing reference in *Murdock II* was intended to mean the State could, in fact, benefit from prospective application of a new rule of law on direct appeal to the defendant's detriment. See *Dawson*, 310 Kan. at 117.

At the time Phipps was sentenced, his sentence was illegal based on impermissible judicial fact-finding under *Mathis* and his prior criminal threat conviction should have been scored as a nonperson felony based on the controlling law at the time of sentencing. That is, had the district court properly sentenced Phipps in June 2022, his prior criminal threat conviction would have been scored as a nonperson felony under *Boettger*. But for the majority's determination *Counterman* was an intervening change in the law, prior opinions from other panels of our court should have led us to remand his sentence with instructions for the district court to resentence him with the prior criminal threat conviction scored as a nonperson felony.

Because Phipps pled no contest, we are generally limited to considering the legality of his sentence. See K.S.A. 2022 Supp. 21-6820(e); K.S.A. 2022 Supp. 22-3602(a) and (f). That is, Phipps could have pursued the same relief through a motion to correct illegal sentence and would be entitled to the benefit of the law as it existed at the time of his original sentencing. The State would not be entitled to the benefit of *Counterman* had Phipps not directly appealed his sentence. See K.S.A. 2022 Supp. 22-

27

3504(c)(1) (defining an illegal sentence); K.S.A. 2022 Supp. 22-3504(c)(2) (defining a change in the law); K.S.A. 2022 Supp. 21-6820(i) (district court has jurisdiction to consider motion to correct illegal sentence while direct appeal is pending; changes in the law will apply to such motion while direct appeal is pending); *Murdock II*, 309 Kan. at 591-92. Here, Phipps is being treated differently from other defendants because he chose to pursue relief through a direct appeal rather than a motion to correct illegal sentence.

In looking at the constitutional underpinnings of the rule allowing defendants the benefit of a change in the law on direct appeal, the focuses are on the due process rights of the accused and not treating one class of defendants differently from another. This rationale comes from the United States Supreme Court's decision in *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), which was adopted by our Supreme Court in *Gaudina v. State*, 278 Kan. 103, 106, 92 P.3d 574 (2004). The *Griffith* Court explained:

> "[T]he use of a 'clear break' exception creates the same problem of not treating similarly situated defendants the same. James Kirkland Batson, the petitioner in *Batson v. Kentucky*, and Randall Lamont Griffith, the petitioner in the present Kentucky case, were tried in Jefferson Circuit Court approximately three months apart. The same prosecutor exercised peremptory challenges at the trials. It was solely the fortuities of the judicial process that determined the case this Court chose initially to hear on plenary review. Justice POWELL has pointed out that it 'hardly comports with the ideal of "administration of justice with an even hand,"' when 'one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine.' *Hankerson v. North Carolina*, 432 U.S. 233, 247, 97 S. Ct. 2339, 2347, 53 L. Ed. 2d 306 (1977) (opinion concurring in judgment), quoting *Desist v. United States*, 394 U.S., at 255, 89 S. Ct., at 1037 (Douglas, J., dissenting). See also *Michigan v. Payne*, 412 U.S. 47, 60, 93 S. Ct. 1966, 1973, 36 L. Ed. 2d 736 (1973)

(MARSHALL, J., dissenting) ('Different treatment of two cases is justified under our Constitution only when the cases differ in some respect relevant to the different treatment'). The fact that the new rule may constitute a clear break with the past has no bearing on the 'actual inequity that results' when only one of many similarly situated defendants receives the benefit of the new rule. *United States v. Johnson*, 457 U.S., at 556, n. 16, 102 S. Ct., at 2590, n. 16 (emphasis omitted)." 479 U.S. at 327-28.

In other words, these issues go to due process and equal protection guaranteed by § 1 of the Fourteenth Amendment to the United States Constitution. See *Chambers v. Florida*, 309 U.S. 227, 236, 60 S. Ct. 472, 84 L. Ed. 716 (1940) (Due Process Clause of Fourteenth Amendment intended to protect criminal defendants). Notably, the Fourteenth Amendment confers no rights to the states. Rather, it restricts state action that infringes upon the rights of citizens. See U.S. Const. amend. XIV, § 1. That is, the State has no constitutional due process right to a fair trial or the same even-handed treatment as the accused.

I understand part of the rationale for the rule in *Griffith* is that courts cannot ignore existing law. See 479 U.S. at 326-27. But I am not convinced *Counterman* should be applied to Phipps' detriment under these facts. "'Equal protection of the laws is not achieved through indiscriminate imposition of inequalities.' *Shelley v. Kraemer*, 334 U.S. 1, 22, 68 S. Ct. 836, 846, 92 L. Ed. 1161 (1948)." *Sweatt v. Painter*, 339 U.S. 629, 635, 70 S. Ct. 848, 94 L. Ed. 1114 (1950). I do not see it as equitable that those defendants who were sentenced and filed a direct appeal before *Counterman* was decided should be penalized based on a change in the law. Only by waiving one right—direct appeal—can a defendant like Phipps protect another—application of *Boettger* through a motion to correct illegal sentence. In my view, this runs dangerously close to violating the doctrine of unconstitutional conditions. See *State v. Mueller*, 271 Kan. 897, 901, 27 P.3d 884

29

(2001) (State cannot condition receipt of a privilege or benefit on the waiver of another right).

I am somewhat troubled by Phipps' failure to address whether it is legally sound as a general matter to prospectively apply *Counterman*. An appellant is required to adequately brief the controlling points of law relevant to the issues before us or risk the issues being waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). But as I have explained, I am not convinced our Supreme Court has indicated it will depart from its previous position. I would vacate Phipps' sentence based on his prior criminal threat conviction being scored as a person felony and remand for him to be resentenced using a criminal history score of D.